IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. CR02-00225 DAE (01) |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF LAW |
| | ) | |
| vs. | ) | |
| | ) | |
| ANDY S.S. YIP,          (01) | ) | |
| BRENDA M.O. CHUNG       (02) | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF LAW

The purpose of this Motion to Exclude Various Government Exhibits and Witnesses is remove from this trial mounds of documentary exhibits and certain testimony which relates solely to 1995-1998 tax years which are not the subject of this trial.

On August 10, Defendant Andy Yip appeared before Magistrate Judge Kurren and pled guilty to Counts 4, 5, 6 and 7 of the Second Superseding Indictment which allege that Mr. Yip committed the offense of willful subscription to false individual income tax returns for the years 1995, 1996, 1997 and 1998, all in violation of 27 U.S.C. 7206(1). Mr. Yip continues with his plea of not guilty as to Counts 1, 9, 10 and 11.

Count 1 alleges that Mr. Yip and co-defendant Brenda Chung conspired to impair, impede, obstruct or defeat the lawful functions of the IRS in the ascertainment and computation of income taxes, i.e., a "Klein" conspiracy. Count 9 alleges that Mr. Yip

willfully subscribed to a false 1999 joint income tax return by checking "no" in the box below Schedule B inquiring about control of foreign bank, securities and financial accounts in violation of 26 U.S.C. 7206(1). Finally, Counts 10 and 11 allege that Mr. Yip knowingly failed to file a FBAR report on TD Form 90-22.1 for the years 1998 and 1999 in violation of 31 U.S.C. 5314 and 5322 and 31 C.F.R. 103.24 and 103.27(c) and (d).

The alleged conspiracy set forth in Count 1 refers to two distinct time periods. Part one relates to the IRS audit of Mr. Yip's 1995 and 1996 income tax returns which occurred during the time period July 28, 1997 and June 24, 1999. Part one of the conspiracy relates to the Defendants having done the following:

1) providing false promissory notes to the IRS revenue agent conducting the audit;

2) making false statements to the revenue agent;

3) recruiting Eriko Dmitrovsky to give false oral and written statements to the revenue agent.

Those three activities are alleged to have occurred within a short time span of approximately four months, May 1998 to September 18, 1998.

The second part of the conspiracy refers to a very narrow time span of May 31, 2002 through July 12, 2002, when Defendant Chung allegedly told Ms. Dmitrovsky to remain in Paris, France to avoid giving grand jury testimony; telling her not to cooperate with the government; and advising her to give false testimony before the grand jury. No overt acts are alleged to have occurred

from September 18, 1998 and May 31, 2002, a period of nearly four years.

As stated above, the Government intends to offer mounds of exhibits that relate to Counts 4 through 7 and the years 1995-1998.. Those counts and years are not part of this trial. In fact, at the beginning of the government's case-in-chief on August 16, Mr. Osborne read into the record the Stipulation, attached as Exhibit "A". The Stipulation reads as follows:

> "IT IS HEREBY STIPULATED by and between the parties that the evidence would show that during the years 1995 - 1998, Defendant Andy S.S. Yip conducted an "off the books" business for the sale primarily of watches. The proceeds from these sales were received mainly in the form of Japanese yen and some travelers checks. The yen and checks were exchanged for blank Honolulu Foreign Exchange checks which were used to payoff various personal and that business' expenses. The IRS investigation would reveal that these activities resulted in a tax loss in excess of $300,000. * * * *

He also referred to the Stipulation during the government's opening statement. Hence, the only purpose for the government to introduce such evidence is to create a spillover effect on the conspiracy and other charges and prejudice Defendant Yip. The unfair prejudice to Defendant Yip, confusion of issues, misleading of the jury and waste of time associated with introducing such evidence in this case far outweigh any marginal purpose the government offers it. Rule 403, F.R.E.

On August 11, the undersigned issued the letter attached as Exhibit "B" to Mr. Osborne stating that the enclosed listing of

government exhibits presumably would not need to be introduced at trial. Mr. Osborne has yet to formally respond the letter, other than to state that he intends to introduce all the exhibits covered by the 11 stipulations relating to credit card, banking and related records.

The American Express exhibits (Exh. 900-905) consist of credit card statements for the period 1995-1998 for three credit cards in Andy Yip's name and two in his Wai Lin Yip's name. These credit card statements refer to both business and personal expenses--none which are at issue in the trial. Similarly, the Citibank (South Dakota) exhibits (Exh. 906-911) consist of credit card statements relating to personal expenses for Andy Yip (1), for Wai Lin (1) and Jeannie Yip (4) for the period 1995-8. Again, those expenses are not at issue in this case.

The Chase USA exhibits (Exh. 912-920) cover credit card statements of Jeffrey Yip for one card and Andy Yip for three cards for the period 1995-8. These disbursements are business and personal, but are not at issue. MBNA exhibits (Exh. 921-923) relate to the same matters as American Express, Citibank, and Chase USA, i.e., disbursements of Jeffrey, Wai Lin and Andy for 1995-8 which are not at issue. It is patently obvious to Defendant Yip that the sole reason for the government to introduce the credit card statements at trial is for the jury to review the disbursements contained therein and, thereby, prejudice Mr. Yip. Rule 403, F.R.E.

The American Savings Bank exhibits (Exh. 300-301B) relate to copies of cashiers checks for 1997-8, 1999, and bank statements of Jeffrey Yip's account for 1996-1999. Similarly, Bank of America exhibits (Exh. 302-303A) relate to cashiers checks 1996-7 and Jeffrey Yip's bank statements 1995-7. Again, these bank records may be relevant to Counts 4 through 7, but certainly not to the conspiracy charge.

The Bank of Hawaii exhibits (Exh. 305-352) relate to the personal bank accounts of Wai Lin and Andy and the account of A.Y. Investment, Inc. for the years 1995-8. While the personal accounts of Wai Lin and Andy for 1995 and 1996 may be relevant on the conspiracy charge, those records are adequately covered by the schedules and bank deposit analysis prepared by Revenue Agent Emerald Liburd. Any personal bank records after 1996 (Exh. 313, 314, 316, 317, 326, 327, 329, 330 and 332) are clearly not relevant since the audit only involved the 1995 and 1996 personal income tax returns. Moreover, the disbursements from those personal accounts (Exh. 309, 312, 313, 314, 315, 316, 317, 318, 322, 325, 326, 327, 328, 329, 330, 331, 332 and 333) after 1996 have no relevancy whatsoever in this trial. Further, no bank records relating to A.Y. Investment, Inc. (Exh. 346-351) are not relevant since A.Y. Investment's returns were part of the audit conducted by Ms. Liburd. Finally, Exhibits 305 and 352 which relate to loan and mortgage history and the 1994 income statement and balance sheet of A & E Creations have no relevancy in this matter.

The Bank of the Orient exhibits ("Exh. 400-401B) pertain to a loan application and three isolated transactions occurring in 1997. First Hawaiian Bank exhibits (Exh. 500-529) relate to Andy Yip's personal account 1995-1998, certain cancelled cashiers checks, Brenda Chung's 1989 application for a mortgage and A.Y. Investment, Inc.'s bank statements and various deposits in 1995-6. We submit that the only exhibits which could possible relevant to this case would be Exhibits 500, 501, 502, 504 and 505. All other exhibits are not relevant and should be excluded at trial.

The records of Central Pacific Bank (Exh. 601-604) relate to a mortgage issued in 1991, a closing statement for that mortgage and a loan ledger. It is doubtful these items are relevant to the years of the conspiracy which occur seven years later.

Further, Defendant Yip objects to any records relating to the cost of home construction from being introduced at trial. The amount involved while disputed exceeds $1.0 million. The government seeks to offer a list of contractors and the payments they received during the period 1995-1997. The only possible reason for introducing this listing is to prejudice the jury. Rule 403, F.R.E. requires that such evidence be excluded at trial.

Finally, Defendant Yip seeks to exclude any of the remaining government exhibits shown on the Exhibit B listing, as well as, all bank records, tax returns, accounting records of A & E Creations and A & E Creations, Inc. and A.Y. Investment, Inc. No

audit adjustments were proposed for A & E and A.Y. was not even subject to the audit. Consequently, these records have no place at this trial.

Apart from the above, government counsel has indicated that he intends to call Wilfred Tochiki, Nancy Huang, Fred Collins and Mark Mero to testify for the government. Mr. Tochiki operated Honolulu Foreign Exchange, Inc. during the years 1995-1998 and did exchanged HFE checks for foreign currency with Mr. Yip during the years 1995-8. How his testimony becomes relevant is suspect since allegations in the conspiracy count have absolutely no reference to HFE checks or the exchanging of yen. The only reference to yen was made in the Stipulation attached as Exhibit "A" which was previously read to the jury.

Nancy Huang, the comptroller of A & E Creations, Inc. will be called to testify about the books and records of A & E. However, there is no issue at trial involving the correctness of the books and records of A & E. Moreover, the most likely testimony from Ms. Huang relates to Defendant Yip allegedly having told her in late 1999 to book additional purchases of $1,000,000 with a 10% profit margin and that had been a recommendation of the undersigned. This statement has absolutely no relevance to the conspiracy or other remaining charges against Defendant Yip, and therefore, should be precluded as prejudicial under Rule 403.

Counsel for the government has also indicated he may call Fred Collins and Mark Mero as witnesses. Both individuals were subcontractors who worked on the construction Mr. Yip's Hawaii Loa

residence. Both individuals had disputes with Mr. Yip regarding the work performed and the billings charged. The only purpose of offering these witnesses is to prejudice Defendant Yip at trial.

Based on forgoing discussion and reasons and authorities, Defendant Andy Yip hereby requests that this Court grant his Motion to Exclude Various Government Exhibits and Witnesses.

DATED:   Honolulu, Hawaii,   August 27, 2007   .


_____
HOWARD T. CHANG
Attorney for Defendant
ANDY S.S. YIP